The STATE of Ohio, Appellee,

v.

ROBINSON, Appellant.

[Cite as *State v. Robinson* (1994), 98 Ohio App.3d 560.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 66226.

Decided Nov. 14, 1994.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Karen L. Johnson,* Assistant Prosecuting Attorney, for appellee.

*David L. Doughten,* for appellant.

---

HARPER, Judge.

Defendant-appellant, Rozell Robinson, appeals from his convictions for involuntary manslaughter and aggravated robbery following a jury trial in the Court of Common Pleas of Cuyahoga County. A careful review of the record compels affirmance of appellant's convictions.

On February 7, 1993, appellant, Demetrius Bailey (a.k.a. Scarface or Face), Diorethius Hudson (a.k.a. Da Da), and Archie Goggans (a.k.a. Bam Bam) entered a late model burgundy station wagon which had been stolen by Goggans two days earlier. Goggans drove to the vicinity of the Martin Luther King Plaza. The four males observed an individual walking, and decided to rob or "jack" the individual of his tennis shoes. Goggans stopped the car; appellant and Bailey

exited the car. Bailey pulled out a purportedly unloaded .38 automatic given to him by appellant earlier, and ordered the intended victim to the ground. The intended victim responded by firing two shots at Bailey, and then fleeing.

Bailey, after falling to the ground, pulled himself back up and was helped into the car. Appellant, Hudson, and Goggans decided it was too risky to be caught in a stolen vehicle, so rather than take Bailey to a nearby hospital, Goggans drove to 1629 Elberon in East Cleveland. The location was almost two miles from the shooting and a block away from a Folks [1] Gang "clubhouse." Bailey was left in the car while appellant went to the clubhouse and directed Disean Buggs (a.k.a. Damage) to "put it [the .38 automatic] up." Investigating officers never recovered the gun or identified the intended victim.

Police officers and emergency technicians arrived at the Elberon location shortly thereafter. The station wagon was impounded after officers discovered it to be stolen, but no significant trace evidence was ever discovered on or in the vehicle. A footprint was seen on the front hood, a footprint which matched the shoes of Buggs, who was eventually arrested by the police.

Goggans and Sanchez Dunlap (a.k.a. Sonny) were present at 1629 Elberon and were also taken into custody. Goggans provided a statement to the police at approximately midnight, and subsequently accompanied police officers to the scene of the robbery and shooting near Ansel and Kenmore in Cleveland. Both East Cleveland and Cleveland police officers photographed the scene, and blood samples were retrieved as well. Finally, Goggans supplied information as to appellant's whereabouts following Goggans's and Dunlap's revealing his identity.

Officers eventually identified three suspects: appellant, who was identified by his street name, Death Row, or by just Row; Goggans; and Hudson. Appellant's last name was confirmed following a three-way telephone conversation between Detective James Hughey of the East Cleveland Police Department, Hudson, and Hudson's mother, and follow-up involving the use of a crisscross directory, telephone records, and motor vehicle records.

Police officers first attempted to locate appellant on February 8, 1993. He was not, however, at his known address. A message that appellant should contact the police department was left with appellant's mother. Appellant made an appointment with the East Cleveland Police Department on February 10, 1993.

Appellant arrived at the station as arranged, and immediately asked whether he would be going to jail. He was told, "no," but was informed that he was wanted for questioning. Appellant was directed to the Detective Bureau, where he was Mirandized and provided with a written form detailing his rights.

---

1. The record also identifies this gang as the Folkz Gang.

Appellant appeared to read the form, and then signed it. According to the detectives then present, appellant was also advised at this time that he was a suspect in a homicide. Appellant himself admitted that an acquaintance of his named Latwanna advised him that he might be charged with Bailey's murder.

After the detectives re-Mirandized appellant, he provided a written statement in which he admitted his initial participation in the robbery plan. However, he explained that once it seemed that the intended victim was entering an apartment building, he had doubts about the plan. Appellant went with the detectives to the scene after providing his statement, and he was then taken home.

According to the detectives, appellant did not appear to be intoxicated or under the influence of drugs when he spoke with them, and was advised of his rights. It also seemed that appellant read and understood the forms given to him, and his written statement. Appellant was not threatened or promised anything in return for his cooperation, and he never requested to see an attorney or invoked his right to remain silent.

Appellant, Goggans, Hudson and Bailey were all known members of the Gangster Disciple Nation, a branch of the Folks Gang. The gang was known throughout the Cleveland, Cleveland Heights, and East Cleveland area. The gang's clubhouse was located at 1637 Carlyon in East Cleveland, the home of a Mrs. Lewis and her daughter, Latwanna. Testimony revealed that police officers were at Mrs. Lewis's home approximately fifteen times in four years for a variety of illegal activity.

The leader of the Gangster Disciple Nation was a man known as "Cornbread." Dunlap identified appellant as being a "governor" of the branch on February 7, 1993 since Cornbread was serving an approximate one and one-half year prison term at the time. Appellant denied that he was a leader of any gang. He admitted that he owned two firearms, a .38 snub-nosed revolver and the .38 automatic which he gave to Bailey. Appellant claimed, however, that the .38 automatic was not operable and that Bailey knew it was not operable when he asked for it on February 7, 1993.

Appellant was observed firing the snub-nose revolver about three weeks prior to February 7, 1993, purportedly in self-defense against some attackers. The day following the alleged attack, appellant went to a nearby field, fired the remaining ammunition into the air, and then gave the revolver to Goggans. The snub-nose revolver was never recovered.

Finally, appellant explained that he was out of favor with the other members of the Gangster Disciple Nation following Bailey's death. Their displeasure stemmed from appellant's sending Bailey into a robbery with an inoperable

firearm, his failure to protect Bailey from the intended victim, and his failure to seek proper medical attention for Bailey.

Appellant denied that he, Hudson, Bailey and Goggans planned to commit a robbery on February 7, 1993. The first time a robbery was mentioned was when Bailey saw a male wearing tennis shoes and expressed an interest in the shoes. Appellant advised Bailey not to commit any offense.

Notwithstanding this advice, Bailey ordered Goggans to stop the car and he exited it. Bailey asked appellant to accompany him. Appellant did so, but then changed his mind and told Bailey to stop because the intended victim lived nearby.

Bailey ordered the intended victim to "drop down." The intended victim did not comply, pulled out a gun and shot Bailey. Bailey fell back, and was helped into the car by appellant, Hudson and Goggans. Bailey was still breathing at the time. They decided to take Bailey back to their clubhouse, where someone would call for an ambulance.

The events of February 7, 1993, led to appellant's April 8, 1993 indictment for one count of involuntary manslaughter, R.C. 2903.04, and two counts of aggravated robbery, R.C. 2911.01. Each count carried a firearm specification.

Trial by jury commenced on July 27, 1993. The jury found appellant guilty of all three counts as charged in the indictment, but found him not guilty of each firearm specification. The trial court thereafter merged counts one and two, and sentenced appellant to serve consecutive terms of ten to twenty-five years on counts one and three.

This appeal followed with appellant claiming as error:

"I. The trial court erred in permitting the prosecution to introduce evidence of the defendant's juvenile record, as such evidence is highly prejudicial to the appellant, and barred by Evidence Rule 609(D).

"II. The trial court erred in permitting the state to introduce appellant's confession into evidence, when circumstances indicated that it was involuntary, and therefore testimony based on that confession constitutes fruit of the poisonous tree, and should have been excluded.

"III. The trial court erred in allowing the state to introduce irrelevant and unfairly prejudicial other acts into evidence in violation of Evidence Rule 404(B).

"IV. The appellant was denied his Sixth Amendment right to confrontation of witnesses when the trial court permitted the state to introduce statements of co-conspirators into testimony, but did not produce those witnesses for trial, thus depriving appellant of his right to cross-examine them.

"V. The evidence is constitutionally insufficient to sustain the convictions."

■ In his first assignment of error, appellant submits that the trial court erred in allowing evidence of a juvenile adjudication to be admitted at trial. Specifically, he argues that a portion of the prosecutor's cross-examination of him and the prosecutor's related comments during closing argument were highly prejudicial and barred by Evid.R. 609(D).

Appellant proposes a similar argument in his third assignment of error and we will thus review it simultaneously with his first assignment of error. He first acknowledges that he is a "member of a gang." However, appellant asserts that the state elicited testimony pertaining to his and his gang branch's activities which was totally irrelevant to whether he participated in the robbery on the date in question. He thus argues that the trial court erred in allowing the introduction of unfairly prejudicial "other acts" in violation of Evid.R. 404(B).

The portion of his cross-examination which appellant suggests is inadmissible follows:

"Q. I just want to ask you a few questions about this organization that you are a member of. * * * You have been in that organization for how long?

"A. A number of years.

"Q. And you were asked a question by Mr. Rossman [defense counsel] whether or not there were any criminal types in your organization.

"MR. ROSSMAN: Objection.

"THE COURT: Overruled.

"Q. Name three people in the Folks, in the Gangster Disciples, who don't have a juvenile or adult record?

"MR. ROSSMAN: Objection.

"THE COURT: Overruled.

"A. A juvenile or adult record?

"Q. Yeah. * * * Name three persons right now, under oath, that don't have either a juvenile or adult record—

"MR. ROSSMAN: Objection.

"Q. —and they're members of the Gangster Disciples?

"A. Me, myself—

"MR. ROSSMAN: Objection.

"THE COURT: Overruled.

"Q. And I?

"A. Me, myself, Dana Lopez, Leo Thomas.

"Q. You are lying about yourself right now under oath, aren't you?

"MR. ROSSMAN: Objection.

"THE COURT: Overruled.

"Q. You have a juvenile record, don't you?

"A. No.

"Q. Are you saying, under oath, you do not have a juvenile record?

"A. I have a probation.

"Q. For what?

"A. For theft * * * I don't consider it a record unless you were in jail for it.

"Q. Does that consideration go to the other people, out of the 30 that are in the gang?

"A. Yes.

"Q. Would they still count as · not having a record, if you count paper, probation, not in jail, is that correct?

"A. No."

Evid.R. 609(D) provides:

"Juvenile adjudications. Evidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly."

The General Assembly enacted R.C. 2151.358, which reads in pertinent part at subsection (H):

" * * * Evidence of a judgment rendered and the disposition of a child under that judgment is not admissible to impeach the credibility of the child in any action or proceeding. *Otherwise, the disposition of a child under the judgment rendered* or any evidence given in court *is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence* and also may be considered by any court as to the matter of sentence or to the granting of probation." (Emphasis added.)

▇ Prior to this current edition of R.C. 2151.358, effective July 31, 1992, the general rule of Evid.R. 609(D) was applicable if a juvenile adjudication was sought to be introduced at a proceeding not involving sentencing or a probation matter.[2] See, *e.g., In re Johnson* (1989), 61 Ohio App.3d 544, 573 N.E.2d 184.

---

**2.** The predecessor to the current R.C. 2151.358 provided:

" * * * The disposition of a child under the judgment rendered * * * is not admissible as evidence against the child in any other case or proceeding in any other court, except that the

The current version is not as restrictive since it allows the introduction of said evidence pursuant to the Rules of Evidence *except* for the purpose of impeaching the juvenile's credibility. The purpose of Evid.R. 609(D) and R.C. 2151.358 has always been to prohibit the use of a juvenile adjudication for purposes of general impeachment of a witness's credibility. See *State v. Cox* (1975), 42 Ohio St.2d 200, 204, 71 O.O.2d 186, 188, 327 N.E.2d 639, 642–643; *State v. White* (1982), 6 Ohio App.3d 1, 2, 6 OBR 23, 24–25, 451 N.E.2d 533, 535–536. However, other valid uses may be present which allow the introduction of the evidence. See *Davis v. Alaska* (1974), 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

The Supreme Court of Ohio held in *State v. Marinski* (1942), 139 Ohio St. 559, 23 O.O. 50, 41 N.E.2d 387, that when a defendant in a criminal case introduces evidence of his life history, he waives the protection afforded by former G.C. 1639–30,[3] and may be cross-examined with regard to the disposition of a charge against him as a juvenile. *Id.* at syllabus. The court elaborated as follows:

" * * * [A] trial before a judicial tribunal is primarily a truth-determining process, and if it in any sense loses its character as such, it becomes the veriest sort of mockery. It must be remembered that it was this defendant himself who not only offered to tell but insisted upon narrating the story of his previous years. *To place himself in a favorable light before the court and jury it was necessary for him to tell but part of his history and conceal the remainder. This he did. When this challenge confronted the court and the prosecuting attorney, did this statute* [G.C. 1639–30] *render them impotent in their duty to reveal the truth?* The participating members of this court are unanimously of the opinion that it did not. *The cross-examination was proper.*" (Emphasis added.) *Id.,* 139 Ohio St. at 560–561, 23 O.O. at 51, 41 N.E.2d at 388.

The Franklin County Court of Appeals recognized the *Marinski* distinction, which allows evidence of a juvenile adjudication, in *State v. Hale* (1969), 21 Ohio App.2d 207, 50 O.O.2d 340, 256 N.E.2d 239. In *Hale,* an armed robbery and shooting took place, and the defendant was charged with murder. The defense's theory was that the defendant was an innocent bystander. The defense thus presented testimony from several witnesses, including defendant, that he attended church on a regular basis, was active in church functions, and was never in trouble prior to the robbery and shooting. The state offered evidence on rebuttal

---

judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation."

**3.** This predecessor to R.C. 2151.38 provided:

"The disposition of a child or any evidence given in the court shall not be admissible as evidence against the child in any case or proceeding in any other court, nor shall such disposition or evidence operate to disqualify a child in any future civil service examination, appointment or application."

that the defendant was found to be a delinquent minor and placed on probation the previous year. *Id.* at 208–210, 50 O.O.2d at 340–342, 256 N.E.2d at 240–242.

The defendant, in his appeal, argued that the trial court erred in allowing direct testimony concerning a matter before the juvenile court. The court first recognized that, generally, the state may not cross-examine a defendant or defense witnesses on the defendant's juvenile record either by eliciting testimony as introduced in a juvenile proceeding or revealing the disposition of the proceeding. *Id.* at 213, 50 O.O.2d at 343, 256 N.E.2d at 243–244. However, it also recognized that once a defendant placed his character in issue by introducing evidence in regard thereto, the state is allowed to impeach it. *Id.* at 214, 50 O.O.2d at 343, 256 N.E.2d at 244. The *Hale* court then held:

" * * * [W]here a defendant, or a defense witness, raises the issue of the defendant's character and behavior, and the court refuses to permit reasonable cross-examination on such issue, the introduction of a juvenile record as direct evidence to meet such character issue is not prejudicial error." *Id.*

In so doing, the court reiterated the *Marinski* court's reliance upon the truth-seeking function of a trial court, stating, "a reasonable interpretation of Section 2151.35(G), Revised Code,[4] should not deny a judicial tribunal a reasonable search for the truth, and, in so doing, best serve the purpose of justice."

A review of appellant's direct examination reveals that it is replete with character references, *e.g.*, to his branch's dedication to "educational, economics, political and social development"; its being a "special group of people with dignity and integrity"; its "six point star" symbol which "stands for life, love, knowledge, wisdom and understanding"; the steps necessary to be a branch leader, *i.e.*, "show respect, stay out of trouble and do your best"; the origin of his nickname, Death Row, being a rap name; the purpose of meeting at the clubhouse was to "laugh, play some music" rather than "plan crimes and stuff"; his branch's compliance with the law. Appellant's direct examination with regard to the branch was thus focused on the purportedly positive aspects of his membership in the Gangster Disciple Nation. Defense counsel's attempt to portray appellant as a social participant in the Gangster Disciple Nation, a law-abiding branch of the Folks Gang, is apparent to this court. The defense's theory, moreover, was that appellant was unaware of Bailey's robbery plan until the moment Bailey observed tennis shoes that he desired, he was not a willing

---

4. R.C. 2151.35(G) read as follows at the time of the *Hale* decision:
" * * * The disposition of a child under the judgment rendered or any evidence given in court is not admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation. * * * "

companion of Bailey's when Bailey exited the car and asked him to join him, and he attempted to convince Bailey not to go ahead with the robbery.

Appellant's purpose behind all of this testimony was obviously intended to lead the jury to the conclusion that the branch of the Folks gang to which he belonged was a nonviolent branch. If so, he could not intend to commit any offense on February 7, 1993 because it just was not in his nature. Appellant now maintains that "[t]he prosecution evidently believed that the appellant's assertion that his gang sect was non-violent opened the door for irrelevant rebuttal." Appellant opened the door as rightly determined by the prosecution, and the prosecution's cross-examination failed to introduce irrelevant rebuttal.

As stated *supra*, Evid.R. 609(D) and R.C. 2151.358 are meant to prohibit juvenile adjudication evidence solely for impeachment purposes. *Cox; White.* However, otherwise than for this purpose, R.C. 2151.358 allows the usage of this evidence in accordance with the Rules of Evidence.

Evid.R. 404(A) provides in relevant part:

"(A) Character Evidence Generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, subject to the following exceptions:

"(1) *Character of Accused.* Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same is admissible[.]" See, generally, *State v. Parrish* (1991), 71 Ohio App.3d 659, 595 N.E.2d 354; *State v. Workman* (1984), 14 Ohio App.3d 385, 14 OBR 490, 471 N.E.2d 853.

Appellant herein introduced evidence on direct examination pertaining to his peaceful character via his membership in a beneficent branch of the Folks gang. Under these circumstances, we find the trial court did not abuse its discretion in allowing the state to cross-examine appellant concerning his juvenile adjudication and his branch's activities. Evid.R. 404(A); R.C. 2151.358; *Marinski; Hale.*

Appellant's first and third assignments of error are overruled.

For his second assignment of error, appellant asserts that the statement given to East Cleveland police officers was not made voluntarily and knowingly. Specifically, appellant submits that testimony at the suppression hearing and at trial demonstrated that he did not realize he was a suspect in Bailey's death until after he provided the statement. He thus argues that the trial court erred in denying his motion to suppress and thereafter erred in allowing the state to use evidence stemming from the statement at trial.

A trial court generally assumes the role of the trier of fact when it is presented with a motion to suppress evidence. See *State v. Rossiter* (1993), 88 Ohio App.3d 162, 623 N.E.2d 645. Therefore, the trial court must determine the

credibility of the witnesses and weigh the evidence presented at the hearings on said motions. *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510, 515; *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542, 547; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. A reviewing court must review the record to determine whether substantial evidence existed to support the trial court's ruling. See *State v. Brown* (1993), 91 Ohio App.3d 427, 429, 632 N.E.2d 970, 972; *Rossiter*, 88 Ohio App.3d at 166, 623 N.E.2d at 648.

 The state first points that appellant was not "in custody" at the time of his questioning. The test used to determine whether an individual is "in custody" or otherwise "significantly deprived of freedom" for the purposes of *Miranda* protection depends on the circumstances of each case. See *Berkemer v. McCarty* (1984), 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317; *State v. Torres* (1990), 67 Ohio App.3d 268, 271, 586 N.E.2d 1153, 1155. The relevant inquiry is how a reasonable man in the individual's position would have understood the situation. *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336; *Torres*. "[T]he subjective intent of the [officer and] the subjective belief of the suspect are irrelevant in this analysis." *State v. Uhler* (1992), 80 Ohio App.3d 113, 117, 608 N.E.2d 1091, 1093.

Appellant was informed through a message left with his mother that he was wanted for questioning with regard to the events of November 7, 1993. Though he voluntarily went to the police station, he was taken to the Detective Bureau, where he was questioned by a police officer with other officers nearby. He was also given *Miranda* warnings. Moreover, the officers informed appellant at the least that he might be charged with riding in a stolen vehicle. Based upon the foregoing, we find that appellant was "in custody" at the time he provided a statement to the police. See *Torres*.

 Regarding appellant's claim that his statement was not voluntary, he takes issue with the alleged failure of the interrogating police officers to inform him that he was a suspect in Bailey's shooting. In other words, he argues that without this knowledge, his ensuing statements about Bailey's shooting were involuntary and required suppression.

The Ross County Court of Appeals in *Rossiter* expressed the following:

"In *State v. Simmons* (Aug. 25, 1992), Pike App. No. 473, unreported, 1992 WL 208958, we commented:

"'The analysis of a waiver's validity has two distinct aspects: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both

of the nature of the right being waived and the consequences of the decision to abandon it. * * * ' " *Rossiter*, 88 Ohio App.3d at 168, 623 N.E.2d at 649.

This analysis stems from the United States Supreme Court's announcement in *Colorado v. Spring* (1987), 479 U.S. 564, 573, 107 S.Ct. 851, 857, 93 L.Ed.2d 954, 965, that "[o]nly if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." See, also, *Moran v. Burbine* (1986), 475 U.S. 412, 421, 106 S.Ct. 1135, 1140, 89 L.Ed.2d 410, 420.

In the present case, initially, appellant does not dispute that he was Mirandized both orally and in writing; nor does he deny that he understood those rights as given or that he signed the rights statement. Appellant's principal contention is that he was totally unaware that he was a suspect in Bailey's death, and that he might be susceptible to charges related to the death. However, testimony from a police officer present during appellant's questioning revealed that appellant was made aware of this possible charge from the onset of his questioning. In light of the trial court's duty to determine the credibility of the witness pursuant to *Smith* and appellant's failure to present any evidence of coercion, our review of the record herein necessitates an affirmance of the trial court's denial of appellant's motion to suppress.

Appellant's second assignment of error is overruled.

■ Appellant proposes in his fourth assignment of error that he was denied his Sixth Amendment right to confrontation of witnesses. This proposition is premised upon the allowance of testimony relating to the out-of-court statements of Goggans and Hudson.

Appellant admits that the witnesses who testified about Goggans and Hudson's out-of-court statements "never actually quoted from the young men's statements." Rather, testimony related that statements were taken; forensic evidence corroborated Goggans' statement; as a result of the statements, the police were led to four suspects, including appellant, Goggans and Hudson. The statements were thus used to identify suspects and to explain the police officers' investigation. The actual statements or any portions thereof were neither orally quoted or physically introduced into evidence. Under these circumstances, we fail to find a factual basis for appellant's fourth assignment of error. Compare *State v. Gilliam* (1994), 70 Ohio St.3d 17, 635 N.E.2d 1242 (admission of co-defendant's taped statement after co-defendant becomes unavailable does not violate Sixth Amendment right to confront adverse witnesses when totality of circumstances demonstrate its trustworthiness and it is admissible pursuant to a hearsay exception, here Evid.R. 804[B][3], statement against interest).

Appellant's fourth assignment of error is overruled.

█ Appellant, in his final assignment of error, submits that his convictions for aggravated robbery and involuntary manslaughter are not supported by sufficient evidence. Specifically, he denies that he was an aider and abettor to Bailey's offense as he was merely present at the scene, but did not make an overt action meant to further the offense. He also argues that even though he may have agreed to assist Bailey initially, his decision to "back away" from the plan buttresses his insufficiency of the evidence argument.

The Supreme Court of Ohio revisited the standard of review to be utilized by an appellate court when presented with a sufficiency of the evidence argument in *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The court held:

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)" *Id.*, paragraph two of the syllabus.

"Complicity" is defined in R.C. 2923.03 as follows:

"(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following:

"(1) Solicit or procure another to commit the offense;

"(2) Aid or abet another in committing the offense;

"(3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code;

"(4) Cause an innocent or irresponsible person to commit the offense."

█ In *State v. Sims* (1983), 10 Ohio App.3d 56, 10 OBR 65, 460 N.E.2d 672, this court reviewed the standard to convict for complicity. To establish that appellant was an aider or abettor, the state was required to show he assisted, incited or encouraged another to commit the offense. *Id.* at 58–59, 10 OBR at 68–69, 460 N.E.2d at 674–676.

"Aggravated robbery" is defined in R.C. 2911.01 as follows in pertinent part:

"(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:

"(1) Have a deadly weapon or dangerous ordinance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;

"(2) Inflict, or attempt to inflict serious physical harm on another."

R.C. 2903.04(A) sets forth the elements necessary to be proven for the offense of involuntary manslaughter. The section provides that "[n]o person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

In *State v. Chambers* (1977), 53 Ohio App.2d 266, 272–273, 7 O.O.3d 326, 329–330, 373 N.E.2d 393, 397, the Ninth District Court of Appeals stated:

"Having found that the Ohio legislature intended to adopt the proximate cause theory of criminal liability, as to R.C. 2903.04, we hold that when a person, acting individually or in concert with another, sets in motion a sequence of events, the foreseeable consequences of which were known or should have been known to him at the time, he is criminally liable for the direct, proximate and reasonably inevitable consequences of death resulting from his original criminal act." See, also, *State v. Younger* (May 31, 1990), Cuyahoga App. No. 57080, unreported, 1990 WL 71529.

The meaning of proximate cause within the context of R.C. 2903.04 was addressed in *State v. Losey* (1985), 23 Ohio App.3d 93, 95–96, 23 OBR 158, 160–161, 491 N.E.2d 379, 382–383:

" * * * [D]efendant cannot be held responsible for consequences no reasonable person could expect to follow from his conduct; he will be held responsible for consequences which are direct, normal, and reasonably inevitable—as opposed to extraordinary or surprising—when viewed in the light of ordinary experience. * * *

" * * * *

" * * * It is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct. That concept is well-illustrated by the facts of *State v. Chambers, supra*, where the defendant and a confederate broke into a residence, were confronted by the armed resident and, in the melee which ensued, defendant's confederate was mortally wounded by the resident. Determining that the companion's death was a foreseeable consequence of defendant's conduct, the court of appeals upheld his conviction for involuntary manslaughter."

The credibility of witnesses is an issue left primarily to the trier of fact, the jury in the within case. *State v. Grant* (1993), 67 Ohio St.3d 465, 477, 620

N.E.2d 50, 64–65; *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. A reviewing court will accordingly not reverse a conviction where the trier of fact could reasonably conclude from competent, credible evidence that the state proved the offenses beyond a reasonable doubt. *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132; see, also, *Jenks*.

In the present case, there is no dispute that appellant entered a stolen vehicle on February 7, 1993 with Goggans, Bailey and Hudson and that the vehicle was driven to the Martin Luther King Plaza. There is also no dispute that appellant provided Bailey with a .38 automatic some time prior to entering the vehicle. Finally, there is no dispute that appellant accompanied Bailey, who desired someone's tennis shoes, when Bailey asked him to do so. Appellant was fully aware at the time that Bailey had the gun in his possession and meant to steal the tennis shoes. The only subject of debate was whether appellant "backed away" from the plan.

The jury was free to reject appellant's defense that he abandoned any intent to proceed with the robbery of the intended victim. *Grant; DeHass*. Appellant does not, moreover, submit an abandonment defense on appeal as this assignment of error merely focuses on the sufficiency of the evidence. With this in mind, the foregoing undisputed evidence clearly allowed any reasonable trier of fact to find the essential elements of aggravated robbery proven beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. Moreover, the evidence demonstrated that appellant and Bailey, who was armed, approached an intended victim, who in turn mortally wounded Bailey. Bailey's death was a foreseeable consequence of his and appellant's conduct, and thus his conviction for involuntary manslaughter is likewise supported by sufficient evidence. *Chambers; Losey*.

Appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

NAHRA, C.J., and DYKE, J., concur.