OPINION
The present case is the third appeal brought by Defendant-Appellant Joseph Letts. We decided the original direct appeal of his convictions for aggravated murder, four counts of aggravated robbery and firearm specifications on June 13, 1997, wherein we vacated the aggravated murder conviction and remanded for re-sentencing. State v. Letts (June 13, 1997), Montgomery App. No. 15681, unreported. Following re-sentencing, Letts appealed again, at which time we affirmed the trial court's decision. State v. Letts (Jan. 29, 1999), Montgomery App. No. 17084, unreported. On April 6, 2000, Letts filed an application to reopen his appeal on the basis of ineffective assistance of appellate counsel. We later granted his application and the parties have briefed the issues that should have been raised in the original appeal. The new assignments of error are as follows:
 I. The evidence presented at trial was insufficient as a matter of law to support a conviction on any firearm specification.
 II. The evidence presented at trial was insufficient as a matter of law to support any conviction of aggravated robbery.
In the early morning hours of September 20, 1994, five girls, Holly Lai, Michelle Lai, Amy Brogan, Candace Brogan[1], and Danielle Jones, were sitting in a Chevette in the parking lot of an apartment complex. They had been out "roguing" or stealing that night, and had stopped there for Amy and Holly to steal a car radio out of a garage. Upon their return to the Chevette after an unsuccessful theft, a Chevrolet Caprice driven by Aaron Moten and occupied by Rebecca Stidham, Kellie Johnson, and Tyra Patterson passed by and then blocked in the Chevette. At approximately the same time, Joseph Letts, LaShawna Keeney, and Angela Thuman had walked up with a pit bull terrier and joined the people from the Caprice.
As they approached the Chevette, a few of the females outside of the vehicle said, "check it in," which is a slang term meaning they were going to rob the girls. All of the individuals began threatening and harassing the girls in the Chevette, demanding money, drugs, jewelry and other items. In addition, some of the individuals told the dog to "sic `em" several times. Letts in particular attempted to pull a necklace off Danielle's neck, rummaged through the glove compartment, tried to pull Amy out of the car, and either placed or allowed his pit bull to enter the car and sit on Amy's lap, frightening the girls. Among the items forcibly stolen were a purse, jewelry, a pair of shoes, and some cassette tapes.
While the robberies were in progress or immediately thereafter, LaShawna Keeney pulled out a gun and waved it around. During this time, Kellie Johnson was fighting with Michelle Lai and told LaShawna to "shoot the bitch." At that moment, LaShawna shot Michelle in the head. Letts was still near the car at the time of the shooting. As soon as the shot was fired, all of the individuals outside of the car fled the scene.
Letts argues in this appeal that there is insufficient evidence to support either his aggravated robbery convictions or the firearm specifications. When an appellant alleges a sufficiency of the evidence error, the court must determine whether the evidence is "legally sufficient as a matter of law to support the jury verdict." State v. Clemons (1998), 82 Ohio St.3d 438, 444 (citations omitted). An appellate court's standard when presented with this question "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. More specifically, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In his argument, Letts relies heavily on the statement in our June 13, 1997 opinion that "no evidence was presented to show that Letts even knew that a weapon was to be used * * *." Taking this statement as the law of the case, we still find there was sufficient evidence to support Letts' four aggravated robbery convictions and the firearm specifications.
The aggravated robbery statute states:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after such attempt or offense, shall do either of the following:
 (1) Have a deadly weapon or dangerous ordnance, as defined in section 2923.11 of the Revised Code, on or about his person or under his control;
R.C. 2911.01. Part of the definition for a theft offense under R.C.2913.01(K) includes complicity in committing any statutory theft offense, including R.C. 2913.02, which states:
 (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 (1) Without the consent of the owner or person authorized to give consent;
 (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
(3) By deception;
(4) By threat.
Based on the facts as stated above, we find that there is ample evidence to support a finding that Letts was involved in depriving the girls in the Chevette of their property without their consent and by threat. The question then becomes whether the state presented sufficient evidence to show that Letts violated the remaining elements of R.C. 2911.01.
To answer this question, we must first explore the nature of complicity. R.C. 2923.03(A)(2) defines complicity as a "person, acting with the kind of culpability required for the commission of an offense," who "aid[s] or abet[s] another in committing the offense." The statute further provides that anyone who violates the statute will be "prosecuted and punished as if he were the principal offender." R.C. 2923.03(F). Several courts have offered definitions and explanations of aiding and abetting, but essentially it means that the individual assisted, incited or encouraged another to commit the offense. State v. Robinson (1994),98 Ohio App.3d 560, 573.
We have already found that there was sufficient evidence to show Letts assisted in the robbery, thereby implicating him as an accomplice. Violation of the complicity statute requires that the accomplice be treated "as though he was the one who committed every act of the underlying principal offense." (Emphasis added.) State v. Jackson (1993), 90 Ohio App.3d 702, 705, citing State v. Chapman (1986),21 Ohio St.3d 41 and State v. Moore (1985), 16 Ohio St.3d 30. In other words, the court can impute the elements of the principal offense, committed by the principal, to the aider and abettor. Id.
Even accepting as true that he participated in the robbery, because there was no evidence indicating he was aware LaShawna had a gun, Letts argues that he could not be found guilty of the aggravating circumstance required for a conviction of aggravated robbery. We disagree.
In order to elevate a theft offense to aggravated robbery, the state must show that the defendant had a deadly weapon or dangerous ordnance on or about his person or under his control while attempting or committing the theft offense, or fleeing immediately after the attempt or offense. R.C. 2911.01. See, also, State v. Merriweather (1980), 64 Ohio St.2d 57,59. As this language reveals, the weapon need not be in his actual physical possession, but only under his control, meaning "the area from within which [the offender] might gain possession of a weapon * * *." State v. Brown (1992), 63 Ohio St.3d 349, 351. By using language simply requiring mere possession and not actual use or intent to use a deadly weapon, the General Assembly demonstrated its intention that no mens rea is required for that element of the offense. State v. Wharf (1999),86 Ohio St.3d 375, 378. Instead, the only mens rea the state must prove is that required for the theft offense; possession of the deadly weapon is strict liability. Id. at 377.
In examining the legislative history of the robbery statutes, the supreme court explained that the legislature "intended to punish the potential for harm to persons as well as actual harm." Id. at 378, citing Committee Comment to Am.Sub.H.B. No. 511, R.C. 2911.01 and 2911.02. The court further found our case of State v. Edwards (1976), 50 Ohio App.2d 63, persuasive. We held:
 The thrust and philosophy of H.B. 511 is to remove the potential for harm that exists while one is committing a theft offense. The anti-social act is the theft offense, committed while armed with a weapon. Merely having the weapon is the potentially dangerous factual condition warranting the more severe penalty. As to the weapon, no mental condition or actual use is necessary or required under the statute.
Id. at 66-67. Accordingly, the state did not need to prove that Letts "knew" LaShawna possessed the gun in order to find him guilty of aggravated robbery. As an accomplice, he may be found to have committed every element of the offense committed by the principal, including possession of the weapon.
Furthermore, the sentence for Letts' firearm specifications was also proper. Again, as an accomplice, Letts was charged with every act committed by the principal. Chapman, 21 Ohio St.3d at 42. More specifically, Chapman and Moore both held that if the principal violated all of the elements of aggravated robbery, the offender is subject to the three-year term of actual incarceration for a firearm specification, regardless of whether he was the principal or an unarmed accomplice. Id. at 42-43. Because Letts participated in the offense, and LaShawna had a gun during the offense and while fleeing from the scene, he may properly be charged and convicted of both aggravated robbery and the firearm specifications.
Based on the foregoing, both of Letts' assignments of error are overruled. The convictions for all four counts of aggravated robbery and the firearm specifications remain. Judgment affirmed.
 __________ BROGAN, J.
FAIN, J., and YOUNG, J., concur.
[1] Amy and Candace Brogan have no relation with the author of this opinion.