JOURNAL ENTRY AND OPINION
{¶ 1} Appellant the State of Ohio appeals the trial court's decision granting, Appellee, Timothy Baker's motion to suppress. On appeal, the State of Ohio assigns the following error for our review:
"I. The trial court erred in granting Appellee's motion to suppress."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 {¶ 3} On December 8, 2005, the Cuyahoga County Grand Jury indicted Baker for one count of drug possession. Baker pleaded not guilty at his arraignment, and *Page 3 
on February 23, 2006, filed a motion to suppress. On August 24, 2006, the suppression hearing commenced.
 Suppression Hearing {¶ 4} At the suppression hearing, Officer Timothy Grafton, of the Shaker Heights Police Department, testified that he was previously employed by the City of Cleveland Police Department. Officer Grafton testified that on November 4, 2005, while employed by the City of Cleveland, he and fellow officers were conducting a reverse drug operation in the vicinity of East 28th Street and Cedar Avenue.
 {¶ 5} Officer Grafton testified that a reverse drug operation involves the police officers posing as street level drug dealers instead of drug buyers. Officer Grafton stated that the officer posing as a street level drug dealer dresses in urban clothing, which consists of an athletic type shirt, baggy jeans, tennis shoes, and a baseball cap. Officer Grafton also stated that the officer posing as the drug dealer, then waits for vehicular or foot traffic to approach. Officer Grafton further stated the officer posing as the drug dealer is monitored visually and with audio equipment by the other officers.
 {¶ 6} Officer Grafton testified that on November 4, 2005, while posing as a drug dealer, Baker approached on foot and asked "You've got two tens for fifteen?" Officer Grafton testified that he interpreted Baker's statement as request to purchase crack cocaine. Officer Grafton testified that he told Baker to hold on and that he would retrieve the crack cocaine for him. Officer Grafton stated that he walked away from Baker and proceeded around the corner to where his undercover car was *Page 4 
parked. At that point, the other officers who were maintaining surveillance, moved in and arrested Baker for solicitation of drugs.
 {¶ 7} Sergeant Terrence Shoulders of the Cleveland Police Department's Third District Vice Unit testified that on November 4, 2005, he was monitoring the activities of detectives engaged in reverse drug buys. Sergeant Shoulders testified that he observed Baker approach Officer Grafton. Baker and Officer Grafton had a brief verbal exchange after which both men walked. Sergeant Shoulders testified that he radioed a description of Baker and the direction that he was walking. Sergeant Shoulders testified that a uniformed car immediately arrived and arrested Baker for a violation of the City of Cleveland's solicitation of drug laws.
 {¶ 8} Officer Byron Moore of the Cleveland Police Department testified that he received the order from Sergeant Shoulders to arrest Baker for solicitation of drugs. Officer Moore testified that he approached Baker, handcuffed him, conducted a very quick pat down search of his waistband, placed him in the car, and transported him to their staging area. Once they arrived at the staging area, which is a preset area away from the public, Officer Moore patted down Baker a second time. When he conducted the second pat down, he recovered a crack pipe from the front pouch of Baker's windbreaker.
 {¶ 9} At the conclusion of the hearing, the trial court granted Baker's motion to suppress.
 Motion to Suppress *Page 5 {¶ 10} In its sole assigned error, the State argues the trial court erred in granting Baker's motion to suppress. We disagree.
 {¶ 11} An appeal of a trial court's ruling on a motion to suppress evidence involves mixed questions of law and fact.[1] Initially, we note that in a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.[2] Thus, the credibility of witnesses during a suppression hearing is a matter for the trial court. A reviewing court should not disturb the trial court's findings on the issue of credibility.[3] Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.[4]
 {¶ 12} The Fourth Amendment to the Constitution of the United States and Section 14, Article, I, of the Constitution of Ohio, prohibit unreasonable searches of persons and seizure of their property. Evidence obtained by the State in violation of that prohibition must be suppressed from use by the State in its criminal prosecution of the person from whom it was seized. The purpose of suppression is not to vindicate the rights of the accused person, who may very well have engaged in *Page 6 
illegal conduct, but to deter the State from such acts in the future.[5] The rule is also applied to protect the integrity of the court and its proceedings.[6]
 {¶ 13} Searches and seizures conducted without the authority of a prior judicial warrant are unreasonable per se, and therefore illegal.[7] The State may, nevertheless, prove that its warrantless search was not unreasonable, and thus not illegal, if the State demonstrates that its Officer acted according to one of several exceptions to the warrant requirement when the search and seizure was performed.[8] If the State meets that burden, suppression of the evidence seized is not proper.
 {¶ 14} A defendant who asks a court to suppress evidence because the officer seized it in the course of a warrantless search has the initial burden to prove that the search was warrantless. In practice, the State usually concedes the fact. The burden of going forward then passes to the State, which must present evidence sufficient to establish the existence of an exception to the warrant requirement that makes the seizure reasonable.[9]
 {¶ 15} One of the most frequently cited exceptions to the warrant requirement, is the exception announced in Terry v. Ohio.[10] UnderTerry, a police officer who *Page 7 
reasonably suspects that some specific criminal misconduct is afoot may briefly detain and question the person suspected, though the officer lacks a judicial warrant to do so. If the officer also reasonably believes that the suspect is armed and dangerous, the officer may perform a pat-down search of the suspect's outer garments and an examination of other areas within the suspect's reach in which weapons that could be turned on the officer might be concealed. This search may not be for the purpose of locating evidence of the crime the officer suspects, but if it produces evidence of crime the officer may seize it, and it is not subject to suppression in the State's resulting criminal prosecution.
 {¶ 16} In the instant case, the State relied on Cleveland Codified Ordinance 607.20 to justify the stop and the subsequent charges filed against Baker. Cleveland Codified Ordinance 607.20 pertains to solicitation of drugs and states in pertinent part as follows:
"(a) No person shall solicit another person to sell any controlledsubstance.
 (b) This section does not apply to manufacturers, practitioners, pharmacists, owners of pharmacies, and other persons whose conduct is in accordance with RC Chapters 3719, 4715, 4729, 4731, and 4741 or to any activity prohibited by RC Chapter 2925.
 (c) Whoever violates this section is guilty of soliciting drug sales, a misdemeanor of the first degree." *Page 8 
 {¶ 17} At the suppression hearing, Baker successfully argued that Section (b) of the ordinance made the ordinance inapplicable to the facts of the case. We agree.
 {¶ 18} In ruling on Baker's motion to suppress, the trial court indicated that the testimony revealed that the officers were acting under the auspices of Cleveland Codified Ordinance 607.20. The record reveals that both Officer Grafton and Officer Moore testified that Baker was arrested for a violation of Cleveland Codified Ordinance 607.20. The trial court ruled on their testimony and stated in pertinent part the following:
 "* * * Now, it doesn't seem like there were any other statutes available for which to base this operation on, and there was no testimony on the reverse buy bust operation to indicate how the operation would result against those basically taking the bait and attempting to buy drugs. The Court can only speculate that the transaction would go further to have the potential target offer to purchase and start to actually proceed with the sale. Obviously, the police officers cannot actually sell drugs so that does create some problems with respect to the operation but, again, I'm only interested in whether there was a probable cause here to search the defendant and the probable cause in this case would be the probable cause incident to a lawful arrest. And, again, we have to go back to the statute to look at whether or not this was a lawful arrest based upon the statute here. And again, the operative language that counsel did highlight during the course of examination of several witnesses was that this section does not apply to activity prohibited by Revised Code Chapter 2925. Now obviously, Subsection A of the ordinance does state that no person shall solicit another person to sell any controlled substance. Given that, that would have been enough to conduct a lawful arrest. However, the ordinance goes further and has an exception to the general rule and that exception is that this does not apply to activity prohibited by Chapter 2925. And now if the defendant came up and asked to purchase a controlled substance that was not covered — not an activity prohibited by Revised Code Section 2925 then I believe that *Page 9 the arrest would be lawful. However, there is obviously an intent here by the drafters to somehow create some exclusivity of 2925 and 607.20."[11]
 {¶ 19} A plain reading of Section (b) of Cleveland Codified Ordinance 607.20 indicates that it does not have any applicability to activities prohibited by R.C. 2925. Here, it is undisputed that Officer Grafton believed that Baker was attempting to purchase crack cocaine when Baker approached him and stated "Do you have two tens for a fifteen." The solicitation of crack cocaine would fall under R.C. 2925 as a felony offense. Since the officers based the stop on an alleged activity that is prohibited by R.C. 2925, the arrest and search incident to the arrest was not lawful.
 {¶ 20} In addition, the record reveals that there was an immediate pat down for weapons and no weapons were revealed. Officer Moore testified that he conducted a subsequent, more thorough search, and recovered a crack pipe. The subsequent search which uncovered the crack pipe was not a Terry type pat down for weapons, but a search for evidence. Such a search would have been proper, if not for the exclusion in Section (b) of the ordinance at issue.
{¶ 2i} We conclude on the record before us that Section (b) of the instant ordinance excluded any activity covered by R.C. 2925. As such, the stop and subsequent arrest, which was based on Cleveland Codified Ordinance 607.20, was unlawful. Consequently, the trial court properly granted Baker's motion to suppress. Accordingly, we overrule the State's sole assigned error. *Page 10 
Judgment affirmed.
It is ordered that appellee recover from appellant his costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY J. BOYLE, J. CONCURS; ANN DYKE, J., CONCURS IN JUDGMENT ONLY.
[1] State v. Boulis, Cuyahoga App. No. 86885, 2006-Ohio-3693.
[2] See State v. Robinson (1994), 98 Ohio App.3d 560; State v.Rossiter (1993), 88 Ohio App.3d 162; State v. Lewis (1992),78 Ohio App.3d 518; State v. Warren (Aug. 12, 1991), 4th Dist. No. 90CA7.
[3] See State v. Mills (1992), 62 Ohio St.3d 357; State v.Fanning (1982), 1 Ohio St.3d 19.
[4] See State v. Harris (1994), 98 Ohio App.3d 543.
[5] United States v. Calandra (1974), 414 U.S. 338; Stone v.Powell (1976), 428 U.S. 465.
[6] United States v. Payner (1980), 447 U.S. 727.
[7] Katz v. United States (1967), 389 U.S. 347.
[8] Id.; Coolidge v. New Hampshire (1971), 403 U.S. 443.
[9] Xenia v. Wallace (1988), 37 Ohio St.3d 216.
[10] (1968), 392 U.S. 1.
[11] Tr. at 52-54. *Page 1