[Cite as *State v. Holley*, 2014-Ohio-4.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99746

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## CHARLES HOLLEY

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-562688

**BEFORE:** Kilbane, J., S. Gallagher, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** January 2, 2014

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 405
Rocky River, Ohio 44116

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Maxwell M. Martin
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Charles Holley ("Holley"), appeals from his convictions for assault on a peace officer, obstructing official business, and resisting arrest. He assigns the following errors for our review:

I. Appellant received ineffective assistance of counsel.

II. The convictions for assault on a peace officer, obstructing official business, and resisting arrest are against the manifest weight of the evidence.

{¶2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

{¶3} On June 12, 2012, Holley was charged with three counts of assault on a peace officer; obstructing official business, thereby creating a risk of harm to a peace officer; and resisting arrest. All of the charges are in connection with an incident that occurred at Holley's East Cleveland home.

{¶4} The matter proceeded to a jury trial on February 25, 2013, at which the following evidence was adduced.

{¶5} Ella Bowman ("Bowman") testified that she lives on East 146th Street, in East Cleveland, around the corner from the home that Holley shares with Debbie Williams ("Debbie") on Dover Road, in East Cleveland. On the evening of May 13, 2012, Bowman observed cars parked on both sides of Dover Road impeding traffic, so she spoke to a man who was hosting a party on the street. She identified herself as a

ward leader and a precinct committee person and informed the man that parking was permitted on only one side of the street and that his guests were double parked. At that point, Holley ran up to her car with a bottle in his hand, began to curse at her, and threatened that she could "come up missing." Bowman told Holley that she would see him in court, referencing their then-ongoing litigation that Bowman had filed against him and Debbie in which she alleged that one of their dogs bit her.

{¶6} When Bowman returned home, she called East Cleveland police a total of three times. In the first call, she reported the double parking and the incident with Holley. Approximately 45 minutes later, before the police responded to the first call, Holley drove to her house and began to curse at her. Bowman then called the police for a second time to report this incident. Approximately 15 minutes later, Holley returned on foot and screamed and cursed at Bowman. Bowman's husband told him to leave and called police for the third time. According to Bowman, the police responded about 15 minutes after the third call and took a statement from her.

{¶7} East Cleveland police officers Seana Kelly ("Officer Kelly") and Joseph Dunlap ("Officer Dunlap") testified that they responded to Bowman's call regarding a parking violation and a neighbor dispute. After speaking with Bowman, they went to Holley's home. Holley answered the door and spoke with the officers. He appeared intoxicated and became agitated as they began to ask him questions about Bowman. The officers asked Debbie to come outside. As she stepped out, she started to say something to Officer Dunlap, but Holley grabbed her by the arm and pushed her inside the house.

Holley also went inside and slammed the door closed. The officers testified that they heard Debbie and Holley fighting and the sound of things being broken. Holley ordered the officers off of his property and threatened to let the dogs outside to attack.

{¶8} Officers Kelly and Dunlap asked their supervisor, Sergeant Williams, for permission to make forcible entry into Holley's home in order to conduct a welfare check on the individuals inside the home. By the time Sergeant Williams arrived, Holley was outside on his front porch. He appeared to be intoxicated and highly agitated, yelling at the officers to leave. Sergeant Williams informed Holley that the officers needed to check on the female inside the house. According to Sergeant Williams, Holley refused to let the officers inside. The officers warned Holley that he was facing charges for obstructing official business, but that no charges would be filed if he cooperated.

{¶9} As Sergeant Williams spoke with Holley to calm him down, Holley suddenly turned around and fled to an enclosed porch. Sergeant Williams pursued Holley, and as Holley tried to shut the door, Sergeant Williams pulled him outside and blocked the doorway with his foot. At that point, Holley began to swing at Sergeant Williams and officers Kelly and Dunlop, striking Sergeant Williams three or four times in the stomach and Officer Kelly in the jaw. Holley continued to struggle with the officers as they attempted to handcuff him. He locked his arms, refused their repeated commands to stop resisting arrest, and continued to throw punches at the officers. The officers responded with force. The officers and Holley fell down the front steps during the struggle, causing Sergeant Williams to hurt his lower back. The officers requested

assistance from Cleveland police, but were able to subdue him before they arrived. They denied using tasers during the altercation. Sergeant Williams admitted during cross-examination that as the officers transported Holley to jail, a woman exited the house. She was not injured, and did not need assistance.

{¶10} At the close of its evidence, the state dismissed the charge of assault on a peace officer involving Officer Dunlap. Holley presented testimony from Denise Muzette Jefferson ("Jefferson"), Michael Wayne Alston ("Alston"), and Debbie. Holley also testified on his own behalf.

{¶11} The testimony of Jefferson and Alston established that on May 13, 2012, Jefferson's family had a cookout to celebrate Mother's Day. A neighboring family also had a get-together, so there were many cars parked on the street. Holley, who lives across the street from Jefferson, arrived at her home with his dog around 7:00 p.m. and parked at the end of the driveway. According to these witnesses, Bowman, who had been repeatedly driving up and down the street throughout the day, confronted them. Bowman stated that she was "councilwoman of the street" and told Holley that he had to move his car. Jefferson explained that the car would be moved momentarily. Holley refuted Bowman's authority over the street, and she "kept messing with him." During this exchange, Holley's dog jumped out of his car and went into his house.

{¶12} After Bowman left, the group finished eating and Holley went home. The police responded to the scene a short time later. According to Jefferson, the female officer waited on the walkway leading to Holley's porch, and two male officers knocked

Holley's door and told him to come outside. Holley spoke to the officers briefly, and then closed the door. According to Jefferson and Alston, the officers then charged at Holley, kicked in the door, and used a taser on him as he screamed for Debbie to help him. He remained shackled on the ground for 15 minutes. He was then was taken to jail.

{¶13} Debbie testified that she and Holley live together and have four dogs. On the day of the incident, Holley brought her flowers and a bottle of wine for Mother's Day. They had a couple of glasses of wine together, and Holley left to visit with Jefferson and Alston. When he returned, he told Debbie that the police had arrived and wanted to speak with her. By the time she reached the front door, the police had kicked open the door and had Holley face down on the ground. According to Debbie, the officers were twisting Holley's neck. She stated that they beat him on the side and back with a baton and tased him. Holley struggled to get away and called for Debbie to help him, but the officers told her that if she came outside and the dogs escaped, they would shoot them. Debbie denied that she and Holley had been arguing prior to the arrival of the police and stated that he is always a gentleman.

{¶14} Debbie further testified that Holley was taken to jail, but was released the following day. At that time, he had bruises and marks on his body. Six days after the incident, he went to MetroHealth for treatment.

{¶15} Holley testified that he served three years in the military and was honorably discharged. He received a police officer's certification in 1984. He has worked as a

security guard at various banks and stores, but in 2004 he developed a substance abuse problem. He testified that as a result of his substance abuse problems, he was convicted of domestic violence and drug abuse.

{¶16} On the day of the altercation, Holley acknowledged that he drank a couple of glasses of wine, he visited with his mother, and then ate with Jefferson and Alston. During the visit, Bowman complained that one of Jefferson's guests was double parked on the street. Holley maintained that he has had repeated problems with Bowman in connection with a pending lawsuit in which she alleged that one of his dogs bit her. He stated that Bowman directed a comment at him, and he asked her why she was always harassing people. She then stated that she was going to call the police.

{¶17} Holley immediately left the cookout. He testified that he and Debbie had a peaceful evening, they were not arguing, and he was not intoxicated. He stated that around 10:00 p.m., the police arrived and asked to speak with Debbie. He called for her, but before she reached the front door, the officers charged the door, threw him face down on the ground, and began to beat him. Holley denied striking the officers and denied resisting arrest. Holley believed that the police were trying to break his neck, so he called for Debbie to help him. At that point, the officers told Debbie that if she came outside, they would shoot the dogs. Holley further testified that he lost consciousness during the attack and that he sought medical attention for bruises and lacerations six days later. Holley maintained that the altercation occurred as a result of Bowman's repeated calls to police.

**{¶18}** Holley was subsequently convicted of the remaining counts of assault on a peace officer (Count 1 involving Sergeant Williams and Count 2 involving Officer Kelly); obstructing official business, thereby creating a risk of harm to a peace officer; and resisting arrest. The court sentenced him to concurrent six month terms of incarceration and three years of postrelease control sanctions.

### Ineffective Assistance of Counsel

**{¶19}** In the first assignment of error, Holley argues that he was denied effective assistance of counsel. In order to establish a claim of ineffective assistance of counsel, it must be shown that an attorney's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶20}** In order to establish deficient performance, it must be shown that, under the totality of the circumstances, counsel's representation fell below an objective standard of reasonableness. *Id*. at 688. A court "must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 689. Debatable trial tactics and strategies generally do not constitute deficient performance. *State v. Phillips*, 74 Ohio St.3d 72, 85, 1995-Ohio-171, 656 N.E.2d 643.

**{¶21}** In order to establish prejudice, it must be shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id*.

**{¶22}** Holley contends that his trial counsel was ineffective for questioning him about his prior criminal history that was beyond the ten-year limit set forth in Evid.R. 609.

**{¶23}** Evid.R. 609 provides for impeachment by evidence of the conviction of a crime, and Evid.R. 609(A)(2) permits the evidence of prior convictions as a tool to attack a defendant's credibility and states in pertinent part:

> Notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, or confusion of the issues, or of misleading the jury.

**{¶24}** Evid.R. 609(B), however, imposes time limits on the use of that information and states:

> (B) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of probation * * * unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not

admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with the fair opportunity to contest the use of such evidence.

**{¶25}** In this matter, the record indicates that in 2004, Holley pled guilty to domestic violence with a prior conviction in violation of R.C. 2919.25, a fifth-degree felony, in CR-452152-ZA. Therefore, this conviction occurred fewer than ten years before the instant matter so it was therefore admissible at trial. In any event, Holley's trial counsel could have reasonably determined that this conviction and the prior assault conviction and drug-related convictions would be disclosed once the defense advanced its position that Holley was peaceable and not intoxicated. *State v. Robinson*, 98 Ohio App.3d 560, 649 N.E.2d 18 (8th Dist.1994) (evidence of prior juvenile court adjudications where defendant introduced evidence of his peaceful character on direct examination); *State v. McKnight*, 8th Dist. Cuyahoga No. 62808, 1993 Ohio App. LEXIS 2812 (June 3, 1993) (the normal "limiting rules do not apply where the defendant 'opens the door,' or tends to mislead the jury by his direct testimony."); *State v. Walker*, 8th Dist. Cuyahoga No. 94875, 2011-Ohio-1556 (a defendant may "open the door" to more specific inquiry by, for example, misleading the jury).

**{¶26}** Finally, viewing the record as a whole, it appears that counsel determined, as a reasonable trial strategy, to disclose Holley's prior record in order to demonstrate for the jury that he admits his responsibility when he is guilty and was contesting the instant

charges because he was not guilty. *State v. Ayala*, 5th Dist. Delaware No. 09 CAA 010009, 2010-Ohio-889.

**{¶27}** In accordance with all of the foregoing, the first assignment of error is without merit.

## Manifest Weight of the Evidence Supporting the Conviction

**{¶28}** In his second assignment of error, Holley contends that his convictions are against the manifest weight of the evidence. In reviewing a challenge to the manifest weight of the evidence, the court, after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541.

> A conviction is not against the manifest weight of the evidence solely because the jury heard inconsistent testimony. Credibility determinations on conflicting testimony are issues primarily reserved to the trier-of-fact to be second-guessed only in the most exceptional case.

*State v. McVay*, 10th Dist. Franklin No. 98AP-1246, 1999 Ohio App. LEXIS 4609 (Sept. 30, 1999); *State v. Robinson*, 2d Dist. Montgomery No. 17393, 2001 Ohio App. LEXIS 238 (Jan. 26, 2001).

**{¶29}** In this matter, the evidence presented by the state demonstrated that the East Cleveland officers went to Holley's home as a result of Bowman's complaints. Holley answered the door and spoke with the officers, but he became agitated and appeared intoxicated. As Debbie started to speak with the officers, Holley grabbed her by the arm,

pushed her inside the house, and went inside and slammed the door closed. At that point, the officers heard Debbie and Holley fighting and the sound of things being broken. They then obtained permission to make forcible entry into the home in order to conduct a welfare check. Holley refused to let the officers inside and warned him that he was facing charges for obstructing official business. Once the officers made entry into the home, Holley struck Officer Kelly and Sergeant Williams and continued to struggle and throw punches as the officers attempted to handcuff him. He locked his arms, refused their repeated commands to stop resisting arrest, and continued to throw punches at the officers. Holley maintained that he was not intoxicated, and that he and Debbie had been quietly watching television inside. The defense also posited that Bowman had orchestrated the incident and had incited the police to arrest and beat Holley. Viewing the record as a whole, however, we cannot say that the jury clearly lost its way and created a manifest miscarriage of justice in convicting Holley of the charges.

**{¶30}** The convictions are supported by the manifest weight of the evidence.

**{¶31}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

SEAN C. GALLAGHER, P.J., and
PATRICIA A. BLACKMON, J., CONCUR