OPINION
{¶ 1} Defendants-appellants, Jonithan Jiminez and Alex Jiminez-Ortiz (collectively "appellants"), jointly appeal their convictions from the Butler County Court of Common Pleas. A jury found both men guilty of assault on a police officer in violation of R.C. 2903.13(A) and assault on a police dog in violation of R.C. 2921.321(A). We affirm appellants'convictions.
 {¶ 2} On or about April 23, 2006, 1:00 a.m., Jonithan was a passenger in a Honda Accord driven by another individual. Officer Obermeyer of the West Chester Township *Page 2 
Police Department was in uniform and driving a marked vehicle, but was working an off-duty detail in West Chester at that time. Officer Obermeyer observed the Honda Accord pull onto Cincinnati-Dayton Road with no headlights. He then turned on his overhead lights and siren to initiate a traffic stop of the vehicle. The driver of the Honda Accord, however, continued driving and did not comply with the officer's signal to stop.
 {¶ 3} Thereafter, the suspect vehicle merged over into the left turn lane of Cincinnati-Dayton Road to make a left onto Fountains Boulevard. The traffic light was red at the time. There was a blue truck already in the left turn lane, so the suspect vehicle pulled in behind the blue truck, and the officer proceeded to pull in behind the suspect in the left turn lane. At the light, Officer Obermeyer stayed behind the suspect vehicle and attempted to change the pitch of his police car sirens. When the traffic light turned green, the blue truck and suspect vehicle turned left. The officer continued his pursuit, and after making the turn, the driver of the blue truck pulled over to yield. The suspect vehicle, however, continued to accelerate. Eventually, the vehicle turned onto the road leading to the Fountain Apartments.
 {¶ 4} Once in the parking lot of the apartment complex, the suspect vehicle was stopped by another car attempting to back out of a parking space. Officer Obermeyer pulled in front of the suspect vehicle, jumped out of his police SUV, and proceeded to the rear of the suspect vehicle to secure cover and observe the two individuals in the car. He then drew his duty weapon and ordered both individuals to stay in the vehicle, show him their hands, and to stop moving.
 {¶ 5} Jonithan, however, got out of the vehicle as the driver continued to move around inside. As Jonithan walked toward Officer Obermeyer, the officer gave him commands in English to stop. But, Jonithan indicated that he did not speak English and that there was no problem. Officer Obermeyer then commanded Jonithan to stop and put up his hands using Spanish commands he learned from a training course at Miami University. *Page 3 
While the officer gave the commands, however, Jonithan continued to approach him. Once Jonithan was within reach, Officer Obermeyer grabbed him by the collar and put him on the ground. The officer then placed his foot on Jonithan's shoulder to keep him on the ground so that he could focus his attention on the driver, who continued to move inside the vehicle.
 {¶ 6} After the driver finally complied with his commands, Officer Obermeyer attempted to put Jonithan in handcuffs, but Jonithan resisted. The officer was only able to get one of Jonithan's hands cuffed when the driver fled the scene on foot. Officer Obermeyer then decided to chase after the driver because he was the one who failed to comply during the attempted traffic stop. Before giving chase, however, the officer ordered Jonithan to stay where he was.
 {¶ 7} Officer Buschelman was the next officer to arrive at the scene. When he arrived at the location of the suspect vehicle, he noticed two people walking around the back of the police SUV driven by Officer Obermeyer. One of the individuals was wearing a red shirt and had a handcuff on his hand, matching the description that Officer Obermeyer had given of Jonithan. Jonithan's brother, Alex, testified that Jonithan had gone to a nearby apartment, where Alex lived, to ask for help in speaking with the officer.
 {¶ 8} Both Jonithan and Alex continued to walk toward Officer Buschelman, despite being told to stop in Spanish by Officer Buschelman. When Jonithan was close enough, the officer attempted to grab him and force him to the ground to finish cuffing him. Meanwhile, Alex attempted to approach and speak with the officer, but Officer Buschelman pushed him away. Officer Buschelman then turned back around to deal with Jonithan when he felt a blow to his back. The only two people near the officer at the time were Jonithan, who was on the ground, in front of him, and Alex, who was standing behind him.
 {¶ 9} As Jonithan struggled with Officer Buschelman, Alex again tried to approach him. Officer Dunlevy arrived on the scene and immediately tackled Alex and placed him in *Page 4 
handcuffs to protect Officer Buschelman. Officer Dunlevy then attempted to assist Officer Buschelman with Jonithan. According to the officers, Jonithan was very wet, slippery, and strong, and it was difficult to force him to put his hands behind his back.
 {¶ 10} After more struggling, Officer Lovell, a canine officer for the West Chester Police Department, arrived with his canine, Canto. Officer Lovell observed Officers Dunlevy and Buschelman struggling to gain control of Jonithan.
 {¶ 11} When Officer Lovell determined it was necessary, he commanded canine Canto to bite Jonithan's right ankle and instructed Jonithan to stop resisting. While canine Canto was biting Jonithan's ankle, Jonithan attempted to strike Officer Bushelman. When the dog saw this, it let go of Jonithan's right ankle and attempted to bite him in the arm. At the same time, Jonithan tucked his right arm underneath his chest, and canine Canto bit him in the neck/ear area.
 {¶ 12} Officer Lovell immediately called canine Canto off Jonithan's neck. Jonithan, however, grabbed the dog and attempted to place it in a headlock-type position. Canine Canto then tried to defend itself and bit Jonithan several more times on the arms. Once Jonithan let go of the dog, and Officer Lovell called canine Canto back, and the officers again attempted to apprehend him and place him in handcuffs. They were unsuccessful, however.
 {¶ 13} After another 20 seconds, Officer Lovell again brought canine Canto into the situation. Canine Canto again bit Jonithan in the right ankle. At that time, Jonithan was laying on the ground next to Alex, who kicked canine Canto in the rib cage while it was biting Jonithan. Canine Canto then let go of Jonithan and bit Alex in the left leg. Alex followed Officer Lovell's instructions to stop fighting the dog, and the officer recalled the dog. At the same time, Jonithan got up, slipped out of the officers' grip, and ran away. Officer Lovell then sent canine Canto to apprehend Jonithan. The dog caught up to Jonithan, bit him in the thigh, and took him to the ground. At that point, Jonithan landed on his stomach, and the *Page 5 
officers were able to finally handcuff him.
 {¶ 14} Jonithan and Alex were each charged with one count of assault on a police officer, a felony in the fourth degree, and one count of assault on a police dog, a misdemeanor of the first degree. A jury found appellants guilty as charged. The Butler County Court of Common Pleas sentenced them both to a term of three years probation, with fines, court costs, and community service. Appellants timely appealed, raising two assignments of error.
 {¶ 15} Assignment of Error No. 1:
 {¶ 16} "THE TRIAL COURT ERRED IN LIMITING DEFENSE COUNSEL'S CROSS-EXAMINATION OF THE STATE'S WITNESSES AND PRESENTATION OF EVIDENCE, IN VIOLATION OF DEFENDANTS' CONSTITUTIONAL RIGHT TO DUE PROCESS AND TO CONFRONT WITNESSES AGAINST THEM."
 {¶ 17} Evidentiary rulings lie within the broad discretion of the trial court and will form the basis for reversal on appeal only upon an abuse of discretion that amounts to prejudicial error. State v.Graham (1979), 58 Ohio St.2d 350, 352. Absent an abuse of discretion, an appellate court will not disturb a trial court's ruling as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122,129. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. State v. Wolons (1989), 44 Ohio St.3d 64,68.
 {¶ 18} In their first assignment of error, appellants argue that because no officer displayed any injuries, and the state presented no video or photographic evidence, the entire case rested on the credibility of the officers' testimony. Therefore, appellants assert, they should have been permitted to explore any motive for fabrication on cross-examination, including racial bias, the extent and nature of Jonithan's injuries, and the officers' potential liability for using force without probable cause to arrest. *Page 6 
 {¶ 19} The Sixth Amendment to the United States Constitution provides that an accused in a criminal trial has the right to be confronted with the witnesses against him. The Ohio Constitution further provides in Article I, Section 10 that the accused party has the right to appear and defend in person with counsel and meet the witnesses face to face. A criminal defendant's right to confront and cross-examine a witness is not unlimited, however. Delaware v. Van Arsdall (1986), 475 U.S. 673,679. The "extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court."Alford v. United States (1931), 282 U.S. 687, 694; State v. Green
(1993), 66 Ohio St.3d 141, 147.
 {¶ 20} Furthermore, a trial judge has broad discretion "to preclude repetitive and unduly harassing interrogation" and to "impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Green, 66 Ohio St.3d at 147.
 {¶ 21} First, appellants claim that the trial court erred in barring defense counsel from asking whether appellants were told they were under arrest. The trial transcript, however, reveals that in his cross-examination of Officer Obermeyer, defense counsel did ask whether the officer told Jonithan he was under arrest before the officer put Jonithan's first hand in handcuffs:
 {¶ 22} "[Defense counsel] Q.: You have not told him he is under arrest?
 {¶ 23} "[Officer Obermeyer] A.: No.
 {¶ 24} "Q.: You were taught in command Spanish how to tell people that they are under arrest?
 {¶ 25} "A.: That's correct.
 {¶ 26} "[Prosecutor] : Objection to relevance, Your Honor. *Page 7 
 {¶ 27} "The Court: Sustained.
 {¶ 28} "[Defense Counsel] Q.: You've not told him anything other than, Hands up, which he did. Don't move and get down.
 {¶ 29} "A.: That's correct."
 {¶ 30} This testimony shows that defense counsel did have the opportunity to question the police officer at least once about whether appellants were told they were under arrest. The transcript also reveals that later in defense counsel's cross-examination of Officer Obermeyer, the trial court sustained the objection to defense counsel's question, "Still not told he is under arrest?" To which the officer replied, "That's correct." Furthermore, the trial court did not instruct the jury to disregard the question or answer. Because the court has wide latitude in precluding repetitive interrogation and determining the relevance of a line of questioning, and because the line of questioning had been previously explored, the court did not abuse its discretion in barring such testimony.
 {¶ 31} Second, appellants claim that defense counsel was improperly barred from showing photos to the police officers of Jonithan's dog bite injuries and asking them about the nature of the injuries.
 {¶ 32} The trial transcript reveals that defense counsel discussed Jonithan's injuries at length first with Officer Lovell, the canine officer, and then with Officer Buschelman. Defense counsel's attempt to use the photographs for impeachment purposes was denied by the trial court when the officers described the injuries as depicted in the pictures.
 {¶ 33} Defense counsel first elicited testimony from Officer Lovell on cross-examination that canine Canto bit Jonithan "numerous times" on the back of the leg, back of the head, back of the neck, and sides of the legs and scratched Jonithan on his back and sides. Then, defense counsel elicted testimony from Officer Buschelman that Jonathin was bit on the right side of the head and that there was a large, three-centimeter gash behind his *Page 8 
left ear, and that the bites caused Jonithan's skin to tear. While on the stand, Officer Buschelman also demonstrated for the jury where the dog bit Jonithan and testified that at one point during the incident, Jonithan's "head was in the dog's mouth, period."
 {¶ 34} During this cross-examination of Officer Buschelman, defense counsel attempted to admit photographs depicting Jonithan's injuries. The trial court did not immediately sustain the prosecutor's objection to their admission, but reserved its ruling and permitted defense counsel to lay a proper foundation before reconsidering the admission of the photographs for the purpose of impeaching the officer's testimony about the dog bites. After defense counsel attempted to lay a foundation, the court again considered the photographs' admissibility, examined the photographs at length, and determined that the officer testified to what would have been shown in the pictures. The court found that there was "nothing new to be offered" and that there was "no particular relevance" to the pictures.
 {¶ 35} Although a party may impeach a witness through extrinsic evidence to show bias, prejudice, interest, or any motive to misrepresent, pursuant to Evid.R. 616(A), we find that the trial court did not abuse its discretion when it excluded the photographs of Jonithan's injuries. Defense counsel attempted to admit the photographs during the state's case-in-chief for the purpose of impeaching the officer's credibility and to possibly show that a particular injury was caused by something other than a dog bite. When the officer thoroughly described the bite marks and injuries to be essentially the same as what was depicted in the photographs, the court did not abuse its discretion in excluding the photographs. Because appellants had ample opportunity to question the officers about the nature of Jonithan's injuries and because the trial court did not abuse its discretion in excluding the photographs, appellants' argument is overruled.
 {¶ 36} Thirdly, appellants argue that the trial court improperly precluded defense counsel from attempting to cross-examine the officers about racial epithets allegedly used *Page 9 
toward appellants. Appellants contend that the line of questioning was presented to show that one or more of the officers exhibited a racial bias against his clients, which would affect the credibility of the testifying officers.
 {¶ 37} Defense counsel attempted to bring in the evidence regarding racial epithets in his cross-examination of Officer Lovell, during the following conversation:
 {¶ 38} "Q.: How many times did you order the dog to bite Jonithan?
 {¶ 39} "A.: Twice. Correction, three times.
 {¶ 40} "Q.: Dog's barking. Everyone is yelling. Did you hear anyone yell, Fucking Mexicans?
 {¶ 41} "A.: No, sir.
 {¶ 42} "State's attorney: Objection, Your Honor."
 {¶ 43} In this exchange, defense counsel failed to lay any sort of foundation for the question. The judge carefully considered whether this was an appropriate line of inquiry, and under the circumstances, he determined that there was "virtually no relevance to this line of questioning," and that its prejudicial effect would substantially outweigh any probative value. Because the trial court has broad discretion in limiting the cross-examination of a witness where the court has concerns about harassment, prejudice, confusion of the issues, or marginally relevant interrogation, we find that the trial court did not abuse its discretion in disallowing defense counsel's line of questioning.
 {¶ 44} Finally, appellants argue that the trial court erred when it disallowed testimony from a witness that the police officers used racial epithets in addressing appellants. Appellants assert that such evidence should have been allowed to demonstrate the officers' racial bias for impeachment purposes.
 {¶ 45} Pursuant to Evid.R. 103, a party may not predicate error on the exclusion of evidence during its examination in chief unless the following two conditions are met: (1) the *Page 10 
exclusion of the evidence must affect a substantial right, and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked. Evid.R. 103; State v. Gilmore (1986), 29 Ohio St.3d 190, 191.
 {¶ 46} In Gilmore, the Ohio Supreme Court found that a party is not required to proffer excluded evidence in order to preserve any alleged error for review if the substance of the excluded evidence is apparent to the reviewing court. Id. at 192. In his case-in-chief, appellee attempted to testify as to statements made to him by the informant that this informant allegedly improperly induced him to sell cocaine. When appellee's counsel asked him if the informant urged him to sell cocaine or if appellee initiated the conversations, the state objected on the basis that such testimony was inadmissible hearsay. After the trial court sustained the objections, appellee's counsel failed to proffer what appellee's responses would have been. The Ohio Supreme Court determined that appellee's intended testimony showing he was induced to sell cocaine was "obvious" from the context of the numerous questions presented throughout appellee's testimony. Id.
 {¶ 47} In this case, although not apparent from appellants' brief, it appears that prior to calling a witness named Glenda Perez to testify in appellants' case-in-chief, the state's attorney sought a motion in limine to exclude any testimony from Perez that would support defense counsel's theory that the police officers were racially biased and motivated to fabricate their testimony. It is only apparent from the transcript that Perez made a statement to the police and it references the phrase, "Fucking Mexicans." Defense counsel never proffered Perez's testimony, and we have no additional details about her intended testimony, including where she was when she heard the phrase, how many times it was allegedly used, who allegedly used the words, and how she knew they were being used against appellants. In short, Perez's intended testimony is not obvious from the record. Therefore, we find that *Page 11 
the record is insufficient to determine whether prejudicial error occurred.
 {¶ 48} Accordingly, because we cannot find that the trial court abused its discretion in excluding evidence and because the record is insufficient to determine whether it was error to bar a witness to testify as to alleged racial epithets used against appellants, we overrule appellants' first assignment of error.
 {¶ 49} Assignment of Error No. 2:
 {¶ 50} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT ALEX JIMINEZ-ORTIZ WHEN IT DENIED COUNSEL'S MOTIONS FOR A DIRECTED VERDICT OF ACQUITTAL, AND AGAIN WHEN IT ACCEPTED AND JOURNALIZED A VERDICT OF GUILTY ON THE CHARGE OF ASSAULT ON A POLICE OFFICER, WHICH WAS NOT SUPPORTED BY RELEVANT AND CREDIBLE EVIDENCE."
 {¶ 51} Pursuant to Crim.R. 29(A), a court shall not enter a judgment of acquittal unless "the evidence is insufficient to sustain a conviction of such offense." In reviewing evidence for its sufficiency, a court assesses not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. State v. Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A court should grant the Rule 29(A) motion "only where reasonable minds could not fail to find reasonable doubt." State v.Apanovitch (1987), 33 Ohio St.3d 19, 23.
 {¶ 52} In order for the jury to find Alex guilty of R.C.2903.13, assault on a police officer, the state of Ohio had to prove that he knowingly caused or attempted to cause physical harm to a peace officer in performance of his official duties. We find that the state presented evidence sufficient to sustain a conviction of such offense pursuant to Crim.R. *Page 12 
29(A).
 {¶ 53} At trial, Officer Buschelman testified that the felt a blow to his back and that Alex was the only person behind the officer. In addition, Officer Buschelman testified that at the time, Alex was within an arm's length of him. Officer Dunlevy also supported Officer Buschelman's testimony of Alex's proximity when he testified that he observed Officer Buschelman push Alex away. Finally, Officer Buschelman testified that Alex was the person who struck him. After reviewing the evidence in a light most favorable to the prosecution, we find that if believed, the evidence against Alex supports a conviction of assault on a police officer. Therefore, appellants' second assignment of error is overruled.
 {¶ 54} Judgment affirmed.
 YOUNG, P.J., and WALSH, J., concur *Page 1