OPINION
{¶ 1} Defendant-appellant, Terry Patrick Kraus, appeals his conviction and sentence in the Warren County Court of Common Pleas for felonious assault and domestic violence.
 {¶ 2} In March 2006, appellant was living with his girlfriend of two years, K.F., in K.F.'s condominium in Middletown, in Warren County, Ohio. On March 2, 2006, appellant got into an argument with K.F. after he arrived home late. At one point, K.F. flipped over a plate of food that appellant was carrying, and appellant knocked her down. He then punched her in *Page 2 
the ribs. Shortly thereafter, K.F.'s mother arrived, and appellant stated that if K.F. told the police he hit her, he would tell them K.F. had attacked him with a knife.
 {¶ 3} Later that night, K. F. went to an Urgent Care facility where it was discovered she had two broken ribs. The treating physician called the police. After speaking with K.F., the police went to her condominium where they found appellant drunk, and arrested him.
 {¶ 4} On April 17, 2006, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1), a felony of the second degree, and one count of domestic violence in violation of R.C.2919.25, a felony of the fourth degree.[1]
 {¶ 5} Prior to trial, appellee, the state of Ohio, moved to have the trial court call K.F. as the court's witness pursuant to Evid.R. 614(A). In support, appellee noted that K.F. had signed a statement alleging that appellant had committed the offenses with which he had been charged, but that appellee anticipated K.F. would recant those statements at trial. The trial court granted appellee's motion to call K.F. as a witness of the court.
 {¶ 6} On August 10, 2006, appellant was tried by a jury on the offenses for which he was indicted. After being called as a witness by the trial court, K.F. repeated the allegation she made to police on the night of the incident, namely, that appellant knocked her down after she knocked over his plate of food.
 {¶ 7} However, K. F. also testified that after appellant knocked her down, she went into the kitchen and picked up a steak knife, but put the knife down after realizing "it was not worth it." K.F. testified that appellant attacked her immediately after she had put the knife down. Under questioning from appellee, K.F. acknowledged that she had not mentioned the knife in her statements to the police or the grand jury.
 {¶ 8} Appellee introduced into evidence two recorded telephone calls between *Page 3 
appellant and K.F. that took place while appellant was awaiting trial. Appellant made several incriminating statements during the calls, including one in which acknowledged that he "shouldn't have done what I did," and another in which he told K.F. "If you love me, tell them you had a damn knife so they ain't got a damn defense [sic]."
 {¶ 9} Appellee also introduced the testimony of Lisa Wilson, an expert in "victim dynamics" and domestic violence. Among other things, Wilson testified that victims of domestic violence will often minimize the abuse inflicted upon them because they want their relationship with the abuser to continue.
 {¶ 10} Appellant testified on his own behalf. He acknowledged that he knocked K.F. down after she knocked over his plate of food, but indicated that his doing so was merely a reflexive act made in response to having his plate of food flipped over at him. He also acknowledged punching K.F., but insisted that he did so only after seeing her come at him with a knife. He testified that when he punched K.F., he was merely trying to hit her in the stomach to knock the wind out of her to prevent her from stabbing him. When asked how K.F.'s ribs got broken if he was simply trying to hit her in the stomach, appellant answered, "She's got a low ribcage."
 {¶ 11} After a three-day trial, the jury convicted appellant of felonious assault and domestic violence, and the trial court sentenced him to three years in prison.
 {¶ 12} Appellant now appeals, raising the following assignments of error:
 {¶ 13} Assignment of Error No. 1:
 {¶ 14} "THE TRIAL COURT IMPROPERLY PERMITTED THE STATE TO IMPEACH ITS OWN WITNESS BY USE OF PRIOR INCONSISTENT STATEMENTS."
 {¶ 15} Appellant argues that the trial court committed plain error by allowing appellee to impeach K.F., whom appellant asserts was appellee's own witness, with her prior inconsistent statements, without first showing surprise and affirmative damage as required under Evid.R. *Page 4 
607. We disagree with this argument.
 {¶ 16} Evid.R. 607 states in pertinent part:
 {¶ 17} "(A) Who May Impeach. The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."
 {¶ 18} Evid.R. 607(A)'s limitation on the use of prior inconsistent statements is designed to prevent circumvention of the hearsay rule.State v. Tyler (1990), 50 Ohio St.3d 24, 34. Generally, prior inconsistent statements constitute hearsay evidence and, therefore, are admissible only for impeachment purposes. See State v. Julian,129 Ohio App.3d 828, 836, fn. 12. Without the limitation, a party could call a witness for the sole purpose of disclosing a prior inconsistent statement to the jury, even though the statement would otherwise constitute inadmissible hearsay. State v. Asher (1996),112 Ohio App.3d 646, 653.
 {¶ 19} However, Evid.R. 607 does not apply when the trial court calls the witness pursuant to Evid.R. 614. See State v. Apanovitch (1987),33 Ohio St.3d 19, 22; State v. Reaves (1998), 130 Ohio App.3d 776, 783, fn. 7. Evid.R. 614 states in pertinent part:
 {¶ 20} "(A) Calling by court. The court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called."
 {¶ 21} In this case, appellant acknowledges that appellee made a pretrial motion requesting that the trial court call K.F. as the court's witness, but asserts that "the trial court never made a ruling on this motion on the record."
 {¶ 22} However, the trial court, at appellee's request, supplemented the record with an entry pursuant to App.R. 9(E), in which the court stated that it did, in fact, grant appellee's pretrial motion to designate K.F. as the court's witness pursuant to Evid.R. 614. As a result, *Page 5 
appellee was not required to show surprise and affirmative damage pursuant to Evid.R. 607 to impeach K.F.'s testimony by use of her prior statements. See Apanovitch, 33 Ohio St.3d at 22; and Reaves,130 Ohio App.3d at 783, fn. 7.
 {¶ 23} Appellant also argues that even if this court finds that appellee's use of K.F.'s prior inconsistent statements does not violate Evid.R. 607, it nevertheless violates his constitutional right to confront witnesses against him. Citing Crawford v. Washington (2004),541 U.S. 36, 124 S.Ct. 1354, appellant asserts that the admission of K.F.'s prior testimonial statements "are fundamentally at odds with the right of confrontation." We disagree with this argument.
 {¶ 24} Crawford held that "[w]here testimonial evidence is at issue * * * the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." Id. at 68. The term "testimonial evidence" applies to, among other things, prior testimony before a grand jury. Id.
 {¶ 25} However, the Crawford court also stated:
 {¶ 26} "[W]e reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements. SeeCalifornia v. Green [1970], 399 U.S. 149, 162 * * *. It is therefore irrelevant that the reliability of some out-of-court statements `"cannot be replicated, even if the declarant testifies to the same matters in court."' [Citations omitted.] The Clause does not bar admission of a statement so long as the declarant is present at trial to defend or explain it. (The Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted. See Tennessee v. Street [1985], 471 U.S. 409, 414 * * *.)"Crawford, 541 U.S. at 59, fn. 9.
 {¶ 27} In this case, K.F. was the "declarant" who gave the grand jury testimony that *Page 6 
appellee used to impeach K.F. at trial. Because K.F. appeared for cross-examination at trial, the Confrontation Clause placed no constraint at all on the use of K.F.'s prior testimonial statements, i.e., her grand jury testimony. Id.
 {¶ 28} Appellant's first assignment of error is overruled.
 {¶ 29} Assignment of Error No. 2:
 {¶ 30} "THE TRIAL COURT ERRED IN PERMITTING THE STATE TO PRESENT EXPERT TESTIMONY ON DOMESTIC VIOLENCE AND TRUTHFULNESS OF THE VICTIM."
 {¶ 31} Appellant argues that the trial court erred in allowing appellee to present Lisa Wilson's expert testimony on "victim dynamics" and domestic violence. Specifically, he argues that Ms. Wilson was not qualified to give expert testimony on those issues, and that her testimony should have been excluded because it invaded the province of the jury to determine which testimony is or is not worthy of belief. We disagree with this argument.
 {¶ 32} Evid.R. 702 states in pertinent part:
 {¶ 33} "A witness may testify as an expert if all of the following apply:
 {¶ 34} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 {¶ 35} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
 {¶ 36} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."
 {¶ 37} "Expert testimony in Ohio is admissible if it will assist the trier of fact in search of the truth." State v. Koss (1990),49 Ohio St.3d 213, 216. To establish that expert testimony *Page 7 
will assist the trier of fact, it generally must be established that the subject of the testimony is outside the experience, knowledge or comprehension of the jury or trier-of-fact. State v. Daws (1994),104 Ohio App.3d 448, 462. However, if such knowledge is within the experience, knowledge or comprehension of the jury or trier-of-fact, expert testimony is inadmissible. Koss.
 {¶ 38} Any question concerning the admission or exclusion of expert testimony is within the trial court's discretion, and the court's decision will not be reversed absent an abuse of that discretion.State v. Jones, 90 Ohio St.3d 403, 414, 2000-Ohio-187. A trial court abuses its discretion only when the court's decision is arbitrary, unconscionable, or unreasonable. State v. Jiminez-Ortiz, Butler App. Nos. CA2007-01-025, 026, 2007-Ohio-5496, at ¶ 17, citing State v.Wolons (1989), 44 Ohio St.3d 64, 68.
 {¶ 39} Appellee introduced the testimony of Ms. Wilson to help the jury understand domestic violence, the dynamics of relationships in which domestic violence occurs, and the effects domestic violence can have on victims like K.F. Other courts in this state have upheld a trial court's decision to allow such expert testimony on these kinds of issues.
 {¶ 40} For example, in State v. Dyson (Oct. 27, 2000), Champaign App. No. 2000CA2, the state called an expert on domestic violence who testified about "the cycle of behavior in violent relationships, the issues of power and control in those relationships, and the frequency with which victims recant their stories of abuse due to the control that the perpetrator has over them and their own feelings of being responsible for the abuse." Id. The Dyson court upheld the trial court's decision to admit the expert's testimony, rejecting the defendant's arguments that the expert was not qualified to testify as an expert, and that the matters on which she was testifying were not beyond the ken of the jury. Id. See, also, State v. Thomas, Montgomery App. No. 19435,2003-Ohio-5746, at ¶ 29 (expert testimony regarding the behavioral characteristics of victims of abuse is admissible). *Page 8 
 {¶ 41} In this case, appellant is making the same arguments that were rejected by the Dyson court. For instance, appellant argues that Ms. Wilson was not qualified to testify as an expert. We find this argument unpersuasive.
 {¶ 42} As we have previously noted, Evid.R. 702 provides that a witness may testify as an expert, if, among other things, the witness has "specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony[.]" A witness has "specialized knowledge" if he or she "has information which has been acquired by experience, training or education which would assist the trier of fact in understanding the evidence or a fact in issue."State v. Nemeth, 82 Ohio St.3d 202, 211, 1998-Ohio-376. The determination of whether a witness has such specialized knowledge so as to be permitted to testify as an expert is within the trial court's sound discretion. State v. Clark (1995), 101 Ohio App.3d 389, 411.
 {¶ 43} In this case, Ms. Wilson testified that she has a degree in social work and crisis counseling and is two classes away from obtaining a second degree with a double major in sociology and psychology. She is also a state registered advocate with advanced status, and has close to 200 hours of specific training in various fields relating to various things such as victimization, domestic violence, sexual assault, child abuse, and domestic violence. Over her career she has dealt with several thousand victims of domestic violence.
 {¶ 44} While Ms. Wilson may not have been the best witness available to testify about the subject of domestic violence and its impact on victims, it is well settled that an expert need not be the best expert on the subject in order for his or her testimony to be deemed admissible. Alexander v. Mt. Carmel Medical Center (1978),56 Ohio St.2d 155, 159. Instead, "[t]he test is whether a particular witness offered as an expert will aid the trier of fact in the search for the truth." Id. Therefore, the trial court did not abuse its discretion in determining that Ms. Wilson was qualified as an expert in matters involving domestic violence *Page 9 
and the impact it has on the victims of that abuse.
 {¶ 45} Appellant also contends that Ms. Wilson's testimony should not have been permitted because the matters on which she testified were not beyond the knowledge or experience possessed by lay persons. We find this argument unpersuasive as well.
 {¶ 46} As was stated by the Dyson court:
 {¶ 47} "[T]he average person may not be aware of the dynamics of power, control, and dependency in an abusive relationship. The average person may also be confused or have misconceptions about why a victim of domestic violence would choose to stay with the abuser or to defend the abuser in court." Id., citing Koss, 49 Ohio St.3d at 216.
 {¶ 48} Furthermore, this case is analogous to those involving expert testimony with respect to battered woman syndrome. At one time, the Ohio Supreme Court found expert testimony on battered woman syndrome to be "inadmissible because it is not distinctly related to some science, profession or occupation so as to be beyond the ken of the average lay person." State v. Thomas (1981), 66 Ohio St.2d 518, 521. However, the Ohio Supreme Court overruled Thomas in Koss, wherein the court first recognized the admissibility of expert testimony regarding battered woman syndrome. See State v. Haines, 112 Ohio St.3d 393, 398,2006-Ohio-6711. The Koss court noted:
 {¶ 49} "The difficulty with the expert's testimony is that itsounds as if an expert is giving knowledge to a jury about something the jury knows as well as anyone else, namely, the reasonableness of a person's fear of imminent serious danger. That is not at all, however, what this testimony is directly aimed at. It is aimed at an area where the purported common knowledge of the jury may be very much mistaken, an area where the jurors' logic, drawn from their own experience, may lead to a wholly incorrect conclusion, an area where expert knowledge would enable the jurors to disregard their prior conclusions as being common *Page 10 
myths rather than common knowledge.' (Emphasis sic)" Koss,49 Ohio St.3d at 217, quoting State v. Kelly (1984), 97 N.J. 178, 206.
 {¶ 50} The Ohio Supreme Court has also stated,
 {¶ 51} "`Generally, battered woman syndrome testimony is relevant and helpful when needed to explain a complainant's actions, such as prolonged endurance of physical abuse accompanied by attempts at hiding or minimizing the abuse, delays in reporting the abuse, or recanting the allegations of abuse.' People v. Christel (1995), 449 Mich. 578, 580 * * * Such seemingly inconsistent actions are relevant to a witness's credibility." Haines, 112 Ohio St.3d at 401, at ¶ 44
 {¶ 52} In this case, the trial court noted that Ms. Wilson was not qualified to make any diagnosis with respect to K.F., and Ms. Wilson did not offer any opinion as to whether domestic violence actually occurred in this case. Nevertheless, her expert testimony was relevant and helpful to the jury because it involved matters beyond the jurors' knowledge or experience, and dispelled misconceptions common to lay persons. Specifically, Ms. Wilson's expert testimony helped the jurors to understand K.F.'s motives for wanting to minimize appellant's actions and to recant her prior accusations. Therefore, the trial court did not abuse its discretion in allowing Ms. Wilson's expert testimony.
 {¶ 53} Appellant's second assignment of error is overruled.
 {¶ 54} Assignment of Error No. 3:
 {¶ 55} "THE TRIAL COURT ERRED IN ADMITTING EVIDENCE OF DEFENDANT'S PRIOR CONVICTION AND PRISON TERM."
 {¶ 56} Appellant argues that the trial court erred in allowing appellee to impeach him pursuant to Evid.R. 609 with evidence of his prior conviction for involuntary manslaughter because more than ten years had lapsed from the date of his conviction or release from *Page 11 
confinement, probation, or parole for that offense, and the trial court failed to find that the probative value of the evidence substantially outweighed its prejudicial effect. We disagree with this argument.
 {¶ 57} Appellant testified on direct examination about the significant events of his life up to the time of the charges. In particular, he testified at length about his military service in Vietnam, including the wounds he had suffered in combat and the decorations he had received. When his trial counsel asked him if there was "[a]nything else significant" up until the time of the incident in question, he answered, "No, nothing, really."
 {¶ 58} On cross-examination, appellee was permitted to ask appellant about his prior conviction for involuntary manslaughter for which appellant had served five or six years in prison. Appellant objected to appellee's questioning him about his prior conviction, but the trial court overruled the objection on the ground that the defense had "opened the door" to the question by asking appellant if there was anything else significant in his background, to which appellant had answered no. Appellant acknowledged he had left out his prior conviction for manslaughter when he testified about the significant events of his life, but claimed he "didn't feel that was significant."
 {¶ 59} Evidence of a person's character or a trait thereof is generally not admissible for the purpose of proving that the person acted in conformity therewith. Evid.R. 404(A). However, "[e]vidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same is admissible[.]" Evid.R. 404(A)(1).
 {¶ 60} "Typically, an accused introduces evidence of good character through the testimony of character witnesses. Sometimes, however, character evidence or positive aspects of the accused's background is brought out by the defense during the examination of the accused or other defense witness. This is often a risky tactic. Once the issue is injected into the trial in a significant way, the prosecution's right to rebut may be triggered." (Footnotes *Page 12 
omitted.) 1 Giannelli Snyder, Evidence (2007) 210, Section 404.4.
 {¶ 61} Thus, in State v. Jalowiec, 91 Ohio St.3d 220, 2001-Ohio-26, the court held that where the defendant presented witnesses at trial who testified to his peaceful and loving nature, and additional evidence at his mitigation hearing that he had rheumatoid arthritis, and did not commit various prior drug offenses, the trial court did not abuse its discretion in allowing the prosecution to rebut this evidence by presenting witnesses who testified that the defendant had sold crack cocaine, that he had hit someone with a baseball bat, and that he had bragged about kicking someone in the face during a bar fight. Id. at 231-233.
 {¶ 62} Additionally, in State v. Robinson (1994), 98 Ohio App.3d 560, the court held that the trial court did not abuse its discretion in allowing the prosecution to cross-examine the defendant concerning his juvenile adjudication for theft, where the defendant had introduced evidence on direct examination pertaining to his peaceful character by showing that he was a member of a nonviolent branch of a street gang. Id. at 566-570.
 {¶ 63} In this case, the defense chose to bring out positive aspects of appellant's character during direct examination by having appellant testify about his service in Vietnam and the decorations he received as a result of that service. Consequently, appellee had a right to rebut this evidence of appellant's good character with evidence showing appellant's character defects and serious mistakes in judgment. SeeJalowiec, 91 Ohio St.3d at 233; and Robinson, 98 Ohio App.3d at 570.
 {¶ 64} Nevertheless, appellant argues that the trial court's admission of this evidence violated Evid.R. 609. That rule states in relevant part:
 {¶ 65} "(A) General rule. For the purpose of attacking the credibility of a witness:
 {¶ 66} "* * *
 {¶ 67} "(2) Notwithstanding Evid. R. 403(A), but subject to Evid. R. 403(B), evidence *Page 13 
that the accused has been convicted of a crime is admissible if the crime was punishable by death or imprisonment in excess of one year pursuant to the law under which the accused was convicted and if the court determines that the probative value of the evidence outweighs the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 {¶ 68} "* * *
 {¶ 69} "(B) Time limit. Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement, or the termination of community control sanctions, post-release control, or probation, shock probation, parole, or shock parole imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence."
 {¶ 70} It has been held that if the trial court decides to admit evidence of a prior conviction more than ten years old pursuant to Evid.R. 609(B), the court must make findings of specific facts and circumstances on the record in support of its decision. See State v.Ellis (1982), 8 Ohio App.3d 27, 29; and United States v. Bensisom (C.A. 9, 1999), 172 F.3d 1121, 1125.
 {¶ 71} Appellant argues that there is no indication in the record that the trial court found that the probative value of his conviction for involuntary manslaughter, which appellant *Page 14 
contends is more than 10 years old,[2] substantially outweighed the prejudicial effect of that evidence, and, therefore, the court's decision to admit the evidence violated Evid.R. 609.
 {¶ 72} However, the trial court did not allow appellee to question appellant on his prior conviction pursuant to Evid.R. 609, as appellant contends. Instead, the court permitted the questioning on the grounds that appellee was rebutting appellant's claim that there was nothing else of significance in his life other than what he had told the jury.
 {¶ 73} One commentator has stated:
 {¶ 74} "[Evidence] Rule 609 applies only when a prior conviction is offered to impeach a witness by showing character for untruthfulness. If the evidence is offered under an impeachment theory other than character, Rule 609 does not apply. Similarly, if evidence of prior conviction is offered for reasons other than impeachment, Rule 609 does not apply." 1 Giannelli Snyder, Evidence (2007) 458, Section 609.3.
 {¶ 75} Evidence of an accused's prior conviction may be admitted to prove such things as an element of an offense; a witness' bias; or motive, opportunity, or intent, as set forth in Evid.R. 404(B). Id. Evidence of a prior conviction may also be admitted for purposes of rebuttal. Id. at 459. When evidence of a prior conviction is admitted for these purposes, the requirements of Evid.R. 609 do not apply. See id. at 458-459.
 {¶ 76} In this case, the trial court permitted appellee to ask appellant about his prior conviction to rebut his assertion that he had told the jury about all of the significant events of his life, including his record of military service in Vietnam. In doing so, the trial court accepted the argument put forward by appellee on the issue. *Page 15 
 {¶ 77} However, it was not necessary for appellee or the trial court to rely on such a narrow basis to justify admitting evidence of appellant's prior conviction for involuntary manslaughter. It was appellant himself who made his character an issue at trial when he testified about his military service in Vietnam. See Robinson,98 Ohio App.3d at 566-570 (trial court did not abuse its discretion in allowing the state to cross-examine defendant concerning his juvenile adjudication for theft even though evidence of juvenile adjudications is generally inadmissible under Evid.R. 609[D],[3] where defendant had introduced evidence on direct examination pertaining to positive aspects of his character). Id. at 566-570.
 {¶ 78} Appellant also argues that even if the defense did open the door to such evidence, the evidence should have been excluded under Evid.R. 403(A) because its probative value was substantially outweighed by its prejudicial effect. We find this argument unpersuasive.
 {¶ 79} Evid.R. 403(A) states that "[although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 80} In this case, the probative value of appellant's prior conviction for involuntary manslaughter was not substantially outweighed by the dangers of unfair prejudice, confusion of the issues, or misleading the jury. Appellant's testimony about his service in Vietnam was clearly designed to sway the jurors' emotions in his favor, and, therefore, appellee was clearly entitled to rebut that evidence for the reasons previously mentioned. Consequently, evidence of appellant's prior conviction for involuntary manslaughter was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.
 {¶ 81} Appellant's third assignment of error is overruled. *Page 16 
 {¶ 82} Assignment of Error No. 4:
 {¶ 83} "THE DEFENDANT COULD NOT BE CONVICTED OF FELONY DOMESTIC VIOLENCE BECAUSE HE AND THE VICTIM WERE NOT MARRIED AND HAVE NO CHILDREN TOGETHER."
 {¶ 84} Appellant argues that his conviction for domestic violence cannot stand because R.C. 2919.25 violates the Defense of Marriage Amendment "to the extent it requires the trial court to create a legal status that approximates the design, qualities, significance, or effect of marriage."[4] Appellant concedes that this court has already rejected this argument in State v. Carswell, Warren App. No. CA2005-04-047, 2005-Ohio-6547, but notes that the Ohio Supreme Court accepted that case for review. Appellant asserts that he is raising the issue on this appeal to protect the record.
 {¶ 85} However, while this appeal was pending, the Ohio Supreme Court issued its decision in State v. Carswell, 114 Ohio St.3d 210,2007-Ohio-3723, wherein the court affirmed this court's decision in the matter. Specifically, the Ohio Supreme Court held:
 {¶ 86} "The term `person living as a spouse' as defined in R.C.2919.25 merely identifies a particular class of persons for the purposes of the domestic-violence statutes. It does not create or recognize a legal relationship that approximates the designs, qualities, or *Page 17 
significance of marriage, as prohibited by Section 11, Article XV of the Ohio Constitution." Id. at syllabus.
 {¶ 87} Thus, appellant's conviction for domestic violence pursuant to R.C. 2919.25 does not violate Section 11, Article XV of the Ohio Constitution. Id.
 {¶ 88} Appellant's fourth assignment of error is overruled.
 {¶ 89} Assignment of Error No. 5:
 {¶ 90} "THE COMBINED EFFECT OF THE TRIAL COURT'S ERRORS DENIED KRAUS A FAIR TRIAL."
 {¶ 91} Appellant argues that the combined effect of the trial court's errors denied him a fair trial under the "cumulative errors" doctrine. We disagree with this argument.
 {¶ 92} Under the doctrine of cumulative error, "a conviction will be reversed where the cumulative effect of errors in a trial deprives a defendant of the constitutional right to a fair trial even though each of numerous instances of trial court error does not individually constitute cause for reversal." State v. Garner, 74 Ohio St.3d 49, 64,1995-Ohio-168, citing State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus.
 {¶ 93} In this case, the doctrine is inapplicable since we do not find any instances of error.
 {¶ 94} Appellant's fifth assignment of error is overruled.
 {¶ 95} Judgment affirmed.
BRESSLER and POWELL, JJ., concur.
[1] Appellant was also indicted on one count of abduction in violation of R.C. 2905.02(A)(2). However, the abduction charge was dismissed prior to trial.
[2] The exact date of appellant's prior conviction for involuntary manslaughter was never established at trial or anywhere else in the record. However, appellee does not contest that more than ten years have elapsed between the date of appellant's conviction, release from confinement, or termination of his probation or parole, whichever is the later date, and the date of appellant's trial testimony. See State v.Chambers (1984), 21 Ohio App.3d 99, 100 (time limit in Evid.R. 609[B] applies to the date on which witness testifies).
[3] Evid.R. 609 (D) states, "Evidence of juvenile adjudications is not admissible except as provided by statute enacted by the General Assembly."
[4] {¶ a} R.C. 2919.25 states in pertinent part:
{¶ b} "(A) No person shall knowingly cause or attempt to cause physical harm to a family or household member.
{¶ c} "* * *
{¶ d} "(F) * * *
{¶ e} "* * *
{¶ f} "(2) `Person living as a spouse' means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question."
{¶ g} Section 11, Article XV of the Ohio Constitution, which contains Ohio's version of the Defense of Marriage Act, states:
{¶ h} "Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage." *Page 1